[Cite as *State v. Zeigler*, 2017-Ohio-7673.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160428 |
| | | TRIAL NO. B-1500506 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| SEAN ZEIGLER, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 20, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Law Offices of John D. Hill, LLC,* and *John D. Hill,* and *Rubenstein & Thurman LPA* and *Scott A. Rubenstein,* for Defendant-Appellant.

**DETERS, Judge.**

{¶1} In this appeal, defendant-appellant Sean Zeigler argues the trial court committed plain error by failing to merge his convictions for aggravated burglary, two counts of rape, and felonious assault because they were allied offenses of similar import. Because the offenses were committed separately, the trial court did not commit plain error by failing to merge them. We, therefore, affirm its judgment.

## The Charges

{¶2} In March 2015, Zeigler was charged in a six-count indictment. Zeigler was charged in counts one and two with aggravated burglary in violation of R.C. 2911.11(A)(1) and (2), in counts three and four with vaginal rape and rape by fellatio in violation of R.C. 2907.02(A)(2), in count five with felonious assault in violation of R.C. 2903.11(A)(1), and in count six with tampering with evidence in violation of R.C. 2921.12(A)(1). The aggravated-burglary, rape, and felonious-assault counts were accompanied by one-year and three-year firearm specifications pursuant to R.C. 2941.141 and 2941.145.

## Evidence Adduced at the Jury Trial

{¶3} Zeigler pleaded not guilty to the charges and his case proceeded to a jury trial where the state presented the following evidence. On December 17, 2014, J.R. was living at her sister's apartment with her three young daughters. She was asleep in the master bedroom with the three girls when something woke her around 3:40 a.m. She checked social media on her cell phone while she continued to lie in bed. Just as she was dozing off, a man kicked open the bedroom door and burst inside. J.R. recognized the man as Zeigler. He was wearing all black, had gloves on, and had a small pistol in his hand. J.R. sat up screaming, which woke her one-year-old daughter, who was sleeping in the bed beside her.

2

{¶4}    Zeigler ordered J.R. to "Shut up, get up, bitch." J.R. complied. She stood up and pleaded with Zeigler not to do anything to her in front of her kids. Zeigler ordered her to take off the t-shirt she was wearing as a nightgown. J.R. complied, but she continued to plead with him. She testified, "I'm screaming, crying, just asking him. Zig—I'm saying his name—I'm saying Zig, please don't do this." At this point, J.R.'s other two daughters awakened. Zeigler grabbed J.R. and hit her in the head with his pistol.

{¶5}    At gunpoint, Zeigler forced J.R. down the hallway to another bedroom that contained a partially deflated air mattress. Zeigler swept the items off of the mattress, placed a green towel on top of the mattress, and pushed J.R. down on top of it. As J.R. lay on her stomach, she tried to turn so she could see what Zeigler was doing, but Zeigler shoved the gun in her face and ordered her to turn around. J.R. thought Zeigler was putting on a condom, but she could not say for sure. Zeigler then got on top of J.R., put his penis in her vagina, and "pumped maybe a good four times or so" before J.R.'s one-year-old daughter walked into the room. Zeigler told J.R. to stay still while he took the little girl back to the master bedroom with her sisters.

{¶6}    Zeigler was gone for some time. J.R. could hear him walking around on the wooden floors in the apartment. She heard him walk into the bathroom and turn on the water. He returned to where she was, put the gun in her mouth, and walked her into the bathroom. Once there, he ordered her into the bathtub. When she asked why, he put the gun back in her mouth and repeated the order. J.R. complied. The water was still running as she stood there in the tub. Zeigler shut the water off and ordered J.R. to sit down in the tub. Panicked, thinking that Zeigler was going to kill her, J.R. pleaded with him for her life.

{¶7}     At that point, J.R.'s one-year-old daughter walked into the bathroom. J.R. pleaded with Zeigler not to shoot her in front of her daughter. Zeigler took the child back to the master bedroom. While there, he grabbed a CVS pharmacy bag filled with prescription medication and returned to the bathroom. He grabbed other items from a shelf in the bathroom closet. J.R. was still sitting in the bathtub when he pulled out his penis and put it into her mouth. She again pleaded with Zeigler to stop and he left the bathroom.

{¶8}     Zeigler paced back and forth in the hallway as he talked to someone on the phone asking what he should do. When J.R. heard this, she pleaded for her life, promising she would say nothing if Zeigler would leave her alone. Zeigler finished the phone call by stating that he would call back when he was done. He then sat down on the toilet in the bathroom. He called his girlfriend and put the phone on speaker. J.R. pleaded with Zeigler's girlfriend to stop Zeigler. Zeigler then took the phone back into the hallway and told his girlfriend that he would call her when he was heading back to her.

{¶9}     When Zeigler came back into the bathroom, he started making J.R. take the medications he had collected. He began with a Percocet prescription. He removed the Percocet one-by-one from their wrappers, threw them at J.R., and told her to swallow them. She complied, but she pleaded with Zeigler to stop, saying the pills were making her sick.

{¶10}     Zeigler then threw a bottle of rubbing alcohol at J.R. and ordered her to drink it. When J.R. told Zeigler that she couldn't drink the rubbing alcohol, he hit her, and then put the gun to her forehead. She complied and tried to drink the rubbing alcohol, but it burned her mouth. Zeigler gave her a cup of water and

ordered her to finish drinking the rubbing alcohol. She continued drinking the rubbing alcohol until it started to make her vomit repeatedly.

{¶11} J.R. was sitting in the bathtub in a mixture of water and vomit when Zeigler forced her to open her mouth. He squeezed out an entire tube of toothpaste into it. The toothpaste made J.R. vomit again. This time she started vomiting blood. J.R.'s three-year-old daughter came to the bathroom door and asked why J.R. was throwing up and bleeding. J.R. replied, "Mommy's sick;" and she told her daughter to go back to her bedroom and watch television. J.R. testified that at this point approximately two hours had passed since Zeigler had kicked in her bedroom door.

{¶12} J.R. was feeling lightheaded. She was drifting in and out of consciousness when she saw Zeigler pick up a bottle of Motrin. J.R. told Zeigler she was allergic to the Motrin and that taking it would shut down her kidneys and kill her. Zeigler made J.R. take the Motrin. Zeigler then left the room and started talking on his phone. J.R. could hear him say, "I don't know. She['s] in here throwing up. Her kids in here, I don't know if I want to shoot her. I don't know if I want to keep making her [take] this shit."

{¶13} When he returned to the bathroom, J.R.'s one-year-old daughter was screaming, trying to get to her mother. Zeigler yelled at the girl to shut up and go back into the bedroom. He then told J.R., "You better shut up before I kill you." Zeigler then began to collect the foil wrappers for the Percocets. The little girl was still crying. Zeigler asked J.R. where her bottle was and he retrieved it. He started to put tap water in the bottle, but J.R. explained that only milk would quiet the girl. Zeigler told J.R. that he wasn't going to get her milk and that she had better shut up or he was going to kill her. J.R. pleaded for her daughter's life as she drifted in and out of consciousness. Eventually, J.R. heard Zeigler leave the bathroom and go down

5

the steps toward the kitchen. When she heard Zeigler coming back up the steps, she slid down in the tub, held her breath, and pretended to be dead. She lay there very still as her one-year-old daughter screamed her name.

{¶14} When Zeigler came back into the bathroom, he called J.R.'s name and hit her. J.R. didn't move and continued to hold her breath. She could hear Zeigler cursing, slamming around, and collecting things. Then she heard him run out. When she heard the door close, she got out of the tub, gathered her daughters together, and texted a neighbor for help. By this time, the sun was up and it was approximately three and a half hours since Zeigler had kicked in her bedroom door.

{¶15} Unable to wait for her neighbor's arrival, J.R. wrapped a towel around herself and, still dry heaving, she ran to her neighbor's apartment with her daughters. The neighbor called for emergency assistance. J.R. was transported by ambulance to the hospital. Shortly after her arrival, a police detective interviewed her briefly because she was in considerable stomach pain and was still dry heaving. The detective obtained enough information to proceed with an investigation. While J.R. was being prepped for surgery to empty the contents of her stomach, the detective visited her apartment. He then interviewed Zeigler, who had been taken into custody near J.R.'s residence.

{¶16} Zeigler denied any involvement in the offenses, but he consented to a buccal swab and a genital swab for DNA testing. Subsequent analysis of the genital swab revealed the presence of J.R.'s DNA. Zeigler's phone records showed that he had made and received a number of phone calls during the time of the offenses, including several calls with his girlfriend. From the bathtub at J.R.'s apartment, the police recovered multiple towels and washcloths as well as an empty bottle of rubbing alcohol.

**Jury Verdict and Sentence**

{¶17} A jury acquitted Zeigler of the aggravated burglary in violation of R.C. 2911.11(A)(2) and all of the firearm specifications, but it found him guilty of the remaining offenses. The trial court sentenced Zeigler to eight years in prison for the aggravated burglary, ten years for each rape, seven years for the felonious assault, and 24 months for tampering with evidence. It ordered that all the terms be served consecutively, for a total aggregate sentence of 37 years in prison.

**Allied Offenses of Similar Import**

{¶18} In a single assignment of error, Zeigler argues that the trial court erred by failing to merge the aggravated burglary, the two counts of rape, and the felonious assault of J.R. under R.C. 2941.25.

{¶19} R.C. 2941.25 codifies the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct. R.C. 2941.25(A) provides that when the same conduct by the defendant involves two or more allied offenses of similar import, the defendant may be convicted of only one offense. R.C. 2941.25(B) provides that when the defendant's conduct constitutes two or more dissimilar offenses, or when the conduct is similar but is committed separately or with a separate animus, the defendant may be convicted of all the offenses.

{¶20} The Ohio Supreme Court has "consistently recognized that merger is a sentencing question, not an additional burden of proof shouldered by the state at trial." *State v. Washington*, 137 Ohio St.3d 4212, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18. Rather, "[t]he defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single

criminal act." *Id.*; *see State v. Pippin*, 1st Dist. Hamilton Nos. C-160380 and C-160381, 2017-Ohio-6970, ¶ 48.

{¶21} Zeigler concedes that he has forfeited all but plain error by failing to raise the issue of allied offenses at sentencing. *See State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 86, ¶ 3 and 21; *State v. Daniels*, 1st Dist. Hamilton No. C-160203, 2017-Ohio-548, ¶ 12. "[T]o prevail on a claim of plain error under these circumstances, [Zeigler] must demonstrate a prejudicial effect—a 'reasonable probability' that 'he has, in fact been convicted of allied offenses of similar import committed with the same conduct and the same animus.' " *Daniels* at ¶ 14, quoting *Rogers* at ¶ 3 and 25.

{¶22} *In State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31, the Ohio Supreme Court held that when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" Separate convictions are permitted if the court affirmatively answers any of the three questions. *Id.*

{¶23} Neither the *Ruff* decision, nor the language in R.C. 2941.25 mandates the order of the inquiry. Thus, courts may begin their analysis with any of the three questions; and they may end their analysis upon an affirmative answer to any of the three questions. *State v. Williams*, 1st Dist. Hamilton No. C-140199, 2015-Ohio-3968, ¶ 53, quoting *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 86.

{¶24} Zeigler was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides that "no person, by force, stealth, or deception shall

trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense if * * * (1) the offender inflicts, or attempts, or threatens to inflict physical harm on another." Zeigler was also convicted of felonious assault, in violation of R.C. 2903.11(A)(1), which provides that "no person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn," and two counts of rape, in violation of R.C. 2907.02(A)(2), which provides, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶25} Zeigler argues the felonious-assault and two rape offenses must merge with the aggravated burglary because they provided the "physical harm" necessary for the aggravated-burglary offense. Zeigler maintains that the state relied on the same physical harm either from the two counts of rape—his forceful and injurious vaginal and oral penetration of J.R. at gunpoint—or, alternatively, from his conduct that constituted felonious assault—his forcing J.R. to ingest various medications and other chemicals, which caused her serious injury—to elevate the burglary offense to aggravated burglary, and thus, the offenses were committed with the same conduct. We disagree.

{¶26} Here, Zeigler's actions in forcing J.R. to ingest multiple chemical substances were temporally distinct. Zeigler's conduct in forcing J.R. to ingest Percocet and/or rubbing alcohol and her vomiting blood in response to her ingestion of those substances is physical harm that would support the physical-harm element of the felonious assault. Zeigler's separate conduct in forcing J.R. to take Motrin, despite her protests that she was allergic to it and consuming the medicine could kill her, supports the physical-harm element necessary for the aggravated-burglary

9

conviction. Thus, the aggravated burglary, two counts of rape, and felonious assault are not allied offenses of similar import because they were committed by separate conduct. Accordingly, the trial court did not commit plain error by failing to merge them. We, therefore, overrule Zeigler's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry this date.