[Cite as *State v. Zeigler*, 2021-Ohio-3747.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,    :    APPEAL NO. C-200212
                       TRIAL NO. B-1500506
    Respondent-Appellee,    :

 vs.    :    *O P I N I O N.*

SEAN ZEIGLER,    :

    Petitioner-Appellant.    :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed as Modified

Date of Judgment Entry on Appeal:  October 22, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Respondent-Appellee,

*Sean Zeigler*, pro se.

**Bock, Judge.**

{¶1} Petitioner-appellant Sean Zeigler appeals the Hamilton County Common Pleas Court's judgment denying his petition under R.C. 2953.21 et seq. for postconviction relief. Upon our determination that the trial court had no jurisdiction to entertain the petition, we affirm the judgment as modified to dismiss the petition.

{¶2} In 2016, Zeigler was convicted of aggravated burglary, rape, felonious assault, and tampering with evidence in connection with sexually assaulting J.R. We affirmed those convictions in the direct appeal. *State v. Zeigler*, 2017-Ohio-7673, 97 N.E.3d 994, *delayed appeal denied*, 152 Ohio St.3d 1461, 2018-Ohio-1795, 97 N.E.3d 499.

{¶3} In December 2018, Zeigler filed with the trial court a postconviction petition, along with a separate motion seeking leave to file the petition out of time. In this appeal, Zeigler presents two assignments of error that fairly may be read together to challenge the denial of the petition without an evidentiary hearing. We find no merit to that challenge.

*The Postconviction Petition*

{¶4} In his petition, Zeigler sought relief from his convictions on the ground that he had been denied the effective assistance of counsel at trial. He asserted that his trial counsel should have investigated and used at trial four inmate-to-inmate letters sent to him by J.R.'s boyfriend, Ramon Lear. Lear sent the letters while both men were confined in the Hamilton County Justice Center awaiting trial—Lear for shooting at Zeigler and Zeigler's girlfriend, and Zeigler for raping J.R. three days later. Zeigler argued that trial counsel should have used the letters to impeach Lear because after the defense had put Lear on the stand at trial, he denied writing the letters. Zeigler also argued that the letters were exculpatory because Lear stated in the letters that he did not want to see Zeigler go to jail for something that did not happen and because of the "scheme" revealed in the letters: Lear proposed that

Zeigler dissuade his girlfriend from testifying against Lear for the shooting, in exchange for J.R. telling law enforcement that she had fabricated the rape allegations against Zeigler to help Lear get out of jail.

{¶5}	Zeigler further asserted that his trial counsel should have investigated, and should have presented at the hearing on his motion to suppress biological evidence taken from him at the police station, witnesses who had information concerning his detention by the police. Zeigler supported that claim with affidavits provided by his brother and grandmother, who averred that the police had transported Zeigler to the station and, after he had asked to leave, detained him for interrogation and to collect biological evidence, despite the fact that he was not under arrest.

{¶6}	Zeigler also asserted that his trial counsel should have investigated and presented testimony by Vincent Hargrove, who had been confined with Lear in the Hamilton County Justice Center. That claim was supported by Hargrove's affidavit, in which Hargrove stated that Lear had told him of his plan to convince Zeigler, with a "false" rape accusation, to dissuade his girlfriend from testifying against Lear about the shooting.

{¶7}	Zeigler claimed that he had been unavoidably prevented from discovering the facts on which his postconviction claims depended because trial counsel had ignored his requests for Lear's letters until Zeigler filed a grievance against counsel with the Cincinnati Bar Association. The unavoidable-prevention claim was supported by Zeigler's own affidavit, in which he asserted that he had given his trial counsel the letters, but counsel, despite stating that the letters confirmed their theory of defense, had not used them at trial. The unavoidable-prevention claim was also supported by copies of correspondence between Zeigler and appellate counsel, the Cincinnati Bar Association, and the Ohio Public Defender, concerning the alleged deficiencies in his trial counsel's performance.

*No Jurisdiction to Entertain the Petition*

{¶8} Zeigler filed his postconviction petition well after the time prescribed by R.C. 2953.21(A)(2) had expired. A trial court may entertain a late postconviction petition only if the petition satisfies the jurisdictional requirements of R.C. 2953.23. The petition must show either that the petitioner was unavoidably prevented from timely discovering the facts upon which the postconviction claims depend, or that the postconviction claims are predicated upon a new and retrospectively applicable right recognized by the United States Supreme Court since the time for filing the petition had expired. R.C. 2953.23(A)(1)(a). And the petitioner must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *." R.C. 2953.23(A)(1)(b). If the petitioner does not satisfy those jurisdictional requirements, the petition is subject to dismissal without a hearing. *See* R.C. 2953.21(D) and (F) and 2953.23(A).

{¶9} Zeigler asserted in his motion that his trial counsel had been constitutionally ineffective in failing to investigate and use at trial allegedly exculpatory and impeachment evidence contained in Lear's letters. With respect to Lear's letters, the petition established unavoidable prevention. But Zeigler failed to demonstrate that, but for that alleged constitutional violation, no reasonable factfinder would have found him guilty. The letters were not, as Zeigler insisted, exculpatory. They demonstrated nothing more than Lear's proposal to Zeigler of a mutually beneficial agreement, under which each man would persuade his girlfriend to not cooperate in the prosecution of the other man.

{¶10} Zeigler failed to demonstrate that he had been unavoidably prevented from timely securing Hargrove's affidavit. Neither the record on appeal nor the petition, with its supporting evidence, suggests that trial counsel had even been aware of Hargrove or explains how Zeigler later came upon Hargrove's evidence. And

4

Zeigler effectively concedes in his brief that that evidence could not have been discovered before trial, because Hargrove was not then a known witness.

{¶11} Nor did Zeigler demonstrate that he had been unavoidably prevented from timely discovering the evidence contained in the affidavits provided by his brother and grandmother. Those affidavits essentially corroborated Zeigler's affidavit concerning the substance of his telephone conversations with the affiants after he had been detained by police. And both affiants had been present and poised to testify at the pretrial hearing on Zeigler's motion to suppress the evidence seized during that detention.

*We Affirm*

{¶12} Zeigler's late postconviction petition did not satisfy R.C. 2953.23's jurisdictional standards. We, therefore, hold that the trial court properly declined to conduct a hearing or entertain the petition. And we overrule his assignments of error.

{¶13} Because the trial court had no jurisdiction to entertain the petition, the petition was subject to dismissal without an evidentiary hearing. *See* R.C. 2953.21(D) and 2953.23(A). We, therefore, modify the court's judgment denying the petition to reflect its dismissal. *See* App.R. 12(A)(1)(a). We affirm the judgment as modified.

Judgment affirmed as modified.

**MYERS, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.