[Cite as *State v. Roberson*, 2018-Ohio-1955.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No. L-16-1131

    Appellee                                Trial Court No. CR0201503139

v.

Ronald Roberson                            **DECISION AND JUDGMENT**

    Appellant                               Decided:  May 18, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Mollie B. Hojnicki-Mathieson, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} On June 16, 2016, defendant-appellant, Ronald Roberson, was convicted by

a jury of domestic violence, two counts of aggravated burglary, rape, and participating in

a criminal gang.  The trial court sentenced Roberson to serve 11 months in prison on the

domestic violence count; 9 years in prison on each aggravated burglary count; 9 years in

prison on the rape count; and 6 years in prison on the participating in a criminal gang count. The court ordered Roberson to serve his sentences for domestic violence, the two aggravated burglaries, and rape consecutively, and his sentence for participating in a criminal gang concurrently with the other counts, for an aggregate prison sentence of 27 years and 11 months in prison.

{¶ 2} Roberson appealed his convictions, and we affirmed his rape, aggravated burglary, and domestic violence convictions, but reversed and vacated his conviction for participating in a criminal gang for insufficient evidence. *State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2017-Ohio-4339 ("*Roberson I*").

{¶ 3} On August 17, 2017, Roberson moved to reopen his appeal pursuant to App.R. 26(B), arguing that appellate counsel was ineffective for failing to raise the following assignment of error:

THE TRIAL COURT COMMITTED PLAIN ERROR BY

FAILING TO MERGE THE AGGRAVATED BURGLARY

CONVICTION WITH THE RAPE CONVICTION, THEREBY

VIOLATING THE DOUBLE JEOPARDY CLAUSES OF THE FIFTH

AMENDMENT TO THE UNITED STATES CONSTITUTION AND

SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 4} We granted the motion to reopen, and we now consider the merits of this new assignment of error under App.R. 26(B)(7).

2.

**{¶ 5}** For the following reasons, we find that the trial court did not commit plain error by failing to merge the aggravated burglary and rape convictions because they are offenses of dissimilar import. We find that appellate counsel was not ineffective, and we confirm our prior judgment under App.R. 26(B)(9).

## I. Facts

**{¶ 6}** In our prior decision, we summarized the facts that supported Roberson's five criminal convictions. *Roberson I,* ¶ 4-34. The only facts that are relevant to the assignment of error before us now are those relating to the August 27, 2015 incident, which supported two of Roberson's convictions: aggravated burglary and rape. The relevant facts are these:

Roberson met C.G. in August of 2015. He introduced himself as "Gotti" and asked for her phone number. The day after they met, Roberson called C.G. and asked to come to her house. She assented and the pair smoked marijuana until C.G. asked Roberson to leave. Later that week Roberson came to C.G.'s home with a friend. The three of them smoked marijuana and then Roberson and his friend left. This was the extent of C.G.'s interactions with Roberson prior to August 27, 2015.

Roberson and C.G. both testified that late in the evening of August 26 or early in the morning of August 27 Roberson went to C.G's home and she voluntarily let him into her home. Beyond that, they presented different versions of the events that occurred.

3.

C.G. testified that Roberson called her around midnight while she was sleeping. He told her that he was at a nearby gas station and asked to come over. She agreed. When Roberson knocked on the door, C.G. opened it and let him in. He immediately asked to use her bathroom, which was upstairs where her children were sleeping. She said he could, but he did not return after several minutes. She went up to check on her children and found Roberson in her bedroom, not the bathroom. He asked C.G. to sleep with him, but she told him they should take their time before making the relationship sexual. Roberson grabbed C.G.'s hand to pull her toward the bed, started kissing her, removed her underwear, and engaged in vaginal intercourse with her. Although C.G. was not interested in sleeping with Roberson, she did not tell him "no" when he initiated the sexual activity. She claimed that she was scared to fight him because she did not know him well and did not know what he would do if she refused. C.G. did, however, reply "no" when Roberson asked her if she liked what he was doing and she testified that she also said "no" two other times during the encounter. She also scratched Roberson on his side or his back during sex.

C.G. further testified that after Roberson finished he asked to use C.G.'s phone charger, which he retrieved from the first floor. He charged his phone in her bedroom for a brief time and then went back downstairs. C.G. testified that she was scared so she laid in her bed after Roberson went

downstairs. C.G. heard voices downstairs, but could not identify how many people she heard or if one of them was Roberson. After the voices stopped, C.G. went downstairs and saw that her front door was open and her TVs, computer, and game system were missing. She later discovered that smaller items from upstairs, including her children's tablets, were also missing. C.G. then texted Roberson, telling him that he had 15 minutes to return her property or she was going to call police. She sent him 14 text messages over the course of approximately 30 minutes. One of the messages said, "And you rapped [sic] me I told you no over and over again." Roberson did not respond to any of the messages.

C.G. testified that she called the police after texting Roberson. Officers responded and took C.G. to the Toledo Hospital to have a rape kit performed. At trial, C.G. read from a certified copy of her hospital records. Although C.G.'s testimony largely matched the information in the hospital records, the records contained some additional details. According to the medical records, C.G. told the SANE who examined her that she had asked Roberson to leave when she found him upstairs. The medical records also described her encounter with Roberson in the bedroom a bit differently. She claimed that Roberson said "come here," grabbed her by both arms, and threw her on the bed. The defense did not object to the admission of the records or to C.G. reading from the records.

Roberson provided a different version of the evening's events. He testified that C.G. contacted him and asked him to come to her house. He walked over from a nearby gas station. When he arrived, the two of them smoked marijuana and engaged in some foreplay. He claimed that he never asked to use the bathroom. He also claimed that C.G. suggested they go upstairs to her bedroom where the two engaged in consensual sex. He testified that C.G. became uncomfortable after they had sex and asked him to leave, which he did. He did not lock the door when he left. He claimed he did not take any of C.G.'s property and it would have been impossible for him to take a television, a computer, and a game system with him because he walked to C.G.'s house.

The SANE who examined C.G. testified at trial. She said that C.G.'s demeanor when she arrived at the hospital was "very distraught." She testified that C.G. did not have any physical injuries, which she said is not uncommon in rape victims. She also testified from the hospital records, which contained her notes of the evening's events as told to her by C.G. According to the SANE, C.G. had met a man named Gotti approximately a year before. He called C.G. in the middle of the night and asked to come over. She agreed. When Gotti came to the house he asked to use the restroom. C.G. followed him upstairs and found him sitting on her bed. Gotti grabbed her by both arms, threw her on the bed, and raped her. C.G.

did not want to make any noise because she did not want to wake her children. When Gotti finished, he asked to use her phone charger, which she gave him. When his phone was charged he went downstairs, but C.G. did not know what he did while he was downstairs. C.G. stayed in her room, but could hear noises and voices coming from downstairs. When the noises stopped she went downstairs, locked the door, noticed that some of her property was missing, and called the police. *Roberson I* at ¶ 4-10.

{¶ 7} Based on this evidence, a jury convicted Roberson of aggravated burglary and rape, and the trial court ordered Roberson to serve the sentences consecutively. We upheld both convictions in *Roberson I*. Roberson now argues that the two convictions are allied offenses of similar import and the trial court committed plain error by failing to merge them at sentencing.

## II. Law and Analysis

{¶ 8} Roberson was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1) and rape in violation of R.C. 2907.02(A)(2) and (B).

{¶ 9} Under the relevant aggravated burglary statute, R.C. 2911.11(A)(1), it is illegal for any person "by force, stealth, or deception" to trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when a person other than the person's accomplice is present, with purpose to commit any criminal offense if "the offender inflicts, or attempts or threatens to inflict physical harm

7.

on another." Under R.C. 2901.01(A)(3), "physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 10} A rape conviction under R.C. 2907.02(A)(2) requires the state to prove that the defendant engaged in sexual conduct with another by compelling the other person to submit by force or threat of force. "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶ 11} In *Roberson I*, 6th Dist. Lucas No. L-16-1131, 2017-Ohio-4339, at ¶ 44-59, 64-69, we found that Roberson's separate convictions for aggravated burglary and rape, which both related to the August 27, 2015 incident at C.G.'s home, were supported by sufficient evidence and were not against the manifest weight of the evidence. We specifically found that the rape was the "physical harm" that supported the aggravating circumstance of the burglary conviction. *Id.* at ¶ 56. We now consider whether the aggravated burglary and rape convictions should have merged at sentencing.

{¶ 12} We review de novo a trial court's ruling as to whether convictions merge under the allied-offenses doctrine. *State v. Corker*, 10th Dist. Franklin Nos. 13AP-264, 13AP-265, and 13AP-266, 2013-Ohio-5446, ¶ 28, citing *State v. Roush*, 10th Dist. Franklin No. 12AP-201, 2013-Ohio-3162, ¶ 67. Roberson, however, did not raise the issue of allied offenses of similar import in the trial court. Our review of this issue on appeal is therefore limited to plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Roberson must "demonstrate a reasonable probability

8.

that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus," and "absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶ 13} The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This protection applies to Ohio citizens through the Fourteenth Amendment to the U.S. Constitution. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The right against double jeopardy is also guaranteed by the Ohio Constitution, Article I, Section 10 ("No person shall be twice put in jeopardy for the same offense."). "The protection provided by the Ohio Constitution's Double Jeopardy Clause is coextensive with that provided by the Double Jeopardy Clause of the United States Constitution." *Clark v. Adult Parole Auth.*, 151 Ohio St.3d 522, 2017-Ohio-8391, 90 N.E.3d 909, ¶ 13.

{¶ 14} The Double Jeopardy Clause "protects against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

9.

{¶ 15} R.C. 2941.25 codifies the Double Jeopardy Clause's third protection, which prohibits multiple punishments for the same offense. The statute prohibits multiple convictions for "allied offenses of similar import" arising out of the same conduct. R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 16} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff* at ¶ 26. This means that the "'analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52.

10.

**{¶ 17}** In *Ruff*, the Supreme Court of Ohio announced that whenever a court considers whether there are allied offenses that merge into a single conviction, the court "must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Id.* at ¶ 25. When considering this overarching question, the court must address three sub-questions: (1) Were the offenses "dissimilar in import," meaning did the offenses involve either separate victims or "separate and identifiable" harm? (2) Were the offenses committed separately? and (3) Were the offenses committed with separate animus? *Id.* at ¶ 23-25. "'An affirmative answer to *any* of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.'" (Emphasis added.) *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *Ruff* at ¶ 31. The defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

**{¶ 18}** Under the *Ruff* test, we first address whether the aggravated burglary and rape offenses were "dissimilar in import"—i.e., whether the offenses involved separate victims or "separate and identifiable" harm.

**{¶ 19}** Whether the aggravated burglary and rape offenses involved separate victims is not a simple issue given that three of C.G.'s children, her 9-year-old daughter and 1-year-old twin boys, were asleep in their beds when Roberson trespassed in C.G.'s home. The issue is therefore whether C.G.'s children were separate "victims" of the

aggravated burglary simply because they were home at the time, albeit asleep and completely unaware of Roberson's presence.

{¶ 20} We first note that the indictment does not identify the victims of the aggravated burglary. *See State v. Welninski*, 6th Dist. Wood Nos. WD-16-039 and WD-16-040, 2018-Ohio-778, ¶ 89, fn. 3 (finding that felonious assault and attempted murder offenses did not involve separate victims because the indictment identified only one victim). A "victim," as defined by Black's Law Dictionary, means "'[a] person harmed by a crime, tort, or other wrong.'" *State v. Williams*, 6th Dist. Sandusky No. S-13-007, 2013-Ohio-4838, ¶ 8, quoting Black's Law Dictionary (9th Ed.2009). Here, there was no evidence presented that C.G.'s children suffered any personal "harm" as a result of the aggravated burglary. *See State v. Bankston*, 6th Dist. Ottawa No. OT-17-016, 2017-Ohio-9305, ¶ 23 (finding that felonious assault and attempted aggravated burglary involved separate victims because the defendant physically injured one victim and was ordered to pay restitution to another victim, the homeowner, who was not involved in the physical altercation). Moreover, the relevant police report identifies C.G. as the only "victim" of both the aggravated burglary and rape. We therefore find that the aggravated burglary and rape did not involve separate victims.

{¶ 21} Next, we address whether the aggravated burglary and rape involved "separate and identifiable" harm. If so, the offenses are dissimilar in import and do not merge.

12.

**{¶ 22}** The state argues that the victim, C.G., suffered two distinct harms as a result of the aggravated burglary: "the very personal and physical harm involved in the rape and the property crime involved in the theft of personal belongings." The state further argues that it is immaterial that Roberson was not charged with theft because "uncharged criminal conduct" can constitute separate harm as recognized in one of our prior cases, *State v. Greely*, 6th Dist. Lucas No. L-16-1161, 2017-Ohio-4469.

**{¶ 23}** In *Greely*, the defendant trespassed into the victim's home and raped her orally, anally, and vaginally in her bed, and then raped the victim again in the shower as he attempted to remove his DNA from her anal and vaginal areas. Like Roberson, the defendant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1) and one count of rape in violation of R.C. 2907.02(A). On appeal, we found that the aggravated burglary and rape offenses were not allied offenses of similar import because one rape supported the rape conviction, and the other rapes—although not charged as separate crimes—were separate and identifiable harm that resulted from the aggravated burglary. Or, in other words, in *Greely* there was separate and identifiable *physical* harm that supported the aggravating element of the burglary charge.

**{¶ 24}** In contrast, while the uncharged theft of C.G.'s TVs, computer, and game system was separate and identifiable *harm* that resulted from the aggravated burglary offense, it was not separate and identifiable *physical harm* that could support the aggravating element of the burglary charge on its own. Thus, unlike *Greely*, this case involves a situation "where one offense [i.e., aggravated burglary] involves multiple

13.

harms, and one offense [i.e., rape] constitutes an aggravating element [i.e., physical harm] of the other." *State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2015-Ohio-3367, ¶ 14 ("*Ruff II*").

{¶ 25} In the seminal merger case from the Supreme Court of Ohio, *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the defendant was convicted of three counts of aggravated burglary and three counts of rape based on three separate burglaries, and corresponding rapes, of three different victims. After the Supreme Court of Ohio fashioned a new three-part test for determining whether convictions are subject to merger under R.C. 2941.25, it remanded the case back to the First District Court of Appeals to consider the import of the defendant's aggravated burglary and rape convictions—that is, whether the offenses resulted in "separate and identifiable" harm to each victim. On remand, the First District observed that the aggravated burglary offenses "involve[d] two distinct harms: the intrusion into the sanctity of the home and [sic] the subsequent physical harm (here, the rapes). One harm—the intrusion in the dwelling—is separate and identifiable * * *, but the other harm—the physical harm—is not separate and identifiable." *Ruff II* at ¶ 13. The court then stated:

> If there only needed to be one harm that was separate and identifiable, then rape and aggravated burglary could never merge because aggravated burglary will always involve the "separate and identifiable" harm caused by the intrusion into the dwelling. The same would be true of assault or any other crime constituting the aggravating element of physical harm for

14.

aggravated burglary. Thus, implicit in its rejection of a categorical rule and remand to this court is the idea that the offenses are of similar import when the harm caused by one crime is the same harm that is the aggravating circumstance of another crime. *Id.* at ¶ 16.

{¶ 26} Roberson argues that this case is indistinguishable from *Ruff II* because the harm caused by his rape conviction is the same harm that is the aggravating circumstance of the aggravated burglary conviction and, therefore, the two offenses are of similar import and should have merged. We, however, disagree with *Ruff II*'s recognition of an "implicit" rule from the Supreme Court of Ohio that requires merger whenever one crime results in multiple "separate and identifiable" harms *but* one of those harms is the aggravating circumstance of the other crime. Indeed, this rule runs contrary to the Supreme Court of Ohio's explicit pronouncement that the defendant's conduct in each individual case should be the paramount consideration, and merger is *not* warranted "if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Ruff* at ¶ 26.

{¶ 27} We do, however, recognize that under the Supreme Court of Ohio's decision in *Ruff*, the mere "intrusion into the sanctity of the home" that results from aggravated burglary is not a separate harm that is sufficient to support a finding of dissimilar import on its own—otherwise, aggravated burglary would always be a crime of dissimilar import to another offense, and the Supreme Court of Ohio rejected the notion of such a categorical rule. But here, there was an additional harm that resulted from the

aggravated burglary—theft of C.G.'s TVs, computer, and game system—and this harm is separate and identifiable from the physical harm that resulted from the rape. Under *Ruff*, separate convictions are permissible if "the *harm* that results from each offense is separate and identifiable." (Emphasis added.) *Id.* at paragraph two of the syllabus. Contrary to the First District's holding in *Ruff II*, separate convictions do not require separate and identifiable *physical* harm whenever physical harm is the aggravating element of one crime, nor is there an exception to the general rule, expressly pronounced by the Supreme Court of Ohio in *Ruff*, that requires merger when separate and identifiable harm exists but *some* of that harm overlaps with the aggravating element of another crime. We therefore find that the two offenses were dissimilar in import because the aggravated burglary resulted in harm to C.G. that was "separate and identifiable" from the harm that resulted from the rape.

{¶ 28} Given that we have answered the first prong of the *Ruff* test in the affirmative and determined that the aggravated burglary and rape convictions were offenses of dissimilar import, we need not address the remaining two elements of *Ruff*. *Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, at ¶ 12 ("An affirmative answer to *any* of the [required questions under *Ruff* ] will permit separate convictions." (Emphasis added.)). We therefore find that the trial court did not commit plain error by failing to merge the aggravated burglary and rape offenses.

16.

### III. Conclusion

{¶ 29} Based on the foregoing, we find that the trial court did not commit plain error by failing to merge the aggravated burglary and rape convictions because they are offenses of dissimilar import. Roberson's sole assignment of error is found not well-taken. We find that appellate counsel was not ineffective, and we confirm our prior judgment under App.R. 26(B)(9).

{¶ 30} Roberson is ordered to pay the costs of this application to reopen pursuant to App.R. 24(A).

Judgment confirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

Thomas J. Osowik, J. _____

Christine E. Mayle, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.