# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106532**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ROBERT D. JOHNSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-614774-A

**BEFORE:** Jones, J., E.A. Gallagher, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** September 27, 2018

[Cite as *State v. Johnson*, 2018-Ohio-3999.]
**ATTORNEY FOR APPELLANT**

Erin R. Flanagan
Erin R. Flanagan, Esq., Ltd.
75 Public Square, Suite 920
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Janna R. Steinruck
        Katherine Mullin
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Robert D. Johnson ("Johnson") appeals his conviction and sentence.   For the following reasons, we affirm.

**Procedural History and Facts**

{¶2} In 2017, Johnson was charged with attempted rape, aggravated burglary, burglary, abduction, assault, and criminal damaging stemming from an incident with his former girlfriend, B.B.   The case proceeded to a jury trial, at which the following pertinent evidence was presented.

{¶3} In February of 2017, B.B. lived with her four children in a Cleveland Heights duplex.   B.B. and her children lived in the bottom portion of the house.   Their portion of the house had an entrance into the living room in the front of the house and an entrance from a side stairway outside the kitchen.

{¶4} B.B. met Johnson, and they dated off and on for four years.   The relationship ended in December 2016.   At the time, B.B. was pregnant with Johnson's child and was debating about whether to terminate the pregnancy.   On the night of February 22, 2017, Johnson tried to contact B.B. about the "baby situation" via phone calls and text but she stopped answering.   Johnson arrived at B.B.'s house around 11:00 p.m. and an argument ensued.   Johnson stood outside on the porch, and B.B. yelled at him from inside the house, telling him to leave.   B.B. called the police after Johnson broke the front window and rammed the outer front door with his body weight trying to get into her house. Johnson physically broke through the outer front door and unsuccessfully attempted to

break through the inside door.    He left after he was unable to get inside.

{¶5} The police arrived, and B.B. showed them the damage to the house.    B.B. told the police that she did not want Johnson there and would pursue charges against him if the police found him.    The police looked for Johnson but were unable to locate him.

{¶6} The next day, B.B. helped her landlord fix the damaged window and door. B.B. went to bed around 11:00 p.m. or midnight.    B.B. slept in the living room, and her children slept in the two bedrooms at the back of the house.    Around 3:30 or 4:00 a.m., B.B. woke up to her phone ringing and incoming text messages, all from Johnson.    B.B. silenced her cell phone and then heard a knock at the window.    Johnson was standing at the window watching B.B. ignore the phone calls and text messages: "he was mad that I was literally ignoring him in his face, as he said."

{¶7} Johnson told B.B. to answer the door, and she told Johnson to leave.    B.B. asked Johnson why he was there and told him she was calling the police. Johnson told B.B. "that if I didn't let him in that he was going to break all my windows, and that he also — if he couldn't come in, then I couldn't live there."

{¶8} Johnson was carrying a weighted exercise bar that B.B. recognized as a bar he used to do pull-ups.    Johnson started breaking windows to the house using the end of the bar.    He pushed out the plexiglass window of the back outside door and opened the outer back door.    B.B.'s children woke up and started screaming.    Johnson then left.

{¶9} Johnson returned a short time later while B.B. was consoling her children in the kitchen.    According to B.B., Johnson told her he went to the store and, "he had

thought about it, I needed to give him some [sex] so he could go to work, and he would leave me alone."

{¶10} B.B. saw the exercise bar come through the kitchen door, followed by Johnson. B.B. screamed at Johnson, who told her all she had to do was have sex with him and he would leave. B.B. ran to push him out of the house, and a struggle ensued in the landing of the kitchen stairway. Johnson ripped B.B.'s dress off and threw it outside. Johnson told B.B.'s children to get to the back of the house and leave them alone. According to B.B., Johnson threatened the children that if they did not go to the back of the house, he would beat them. Johnson pinned B.B. against the wall and started to remove his own clothes. The struggle moved through the kitchen, dining room, and into the living room.

{¶11} At one point, Johnson had his hands around B.B.'s neck. During the assault, Johnson pulled out all of B.B.'s hair extensions, and B.B. testified that it "hurt."

{¶12} X.B., B.B.'s oldest child, came out of his bedroom to see what was going on. X.B. saw Johnson on top of his mother with his mother trying to push Johnson off. Both his mother and Johnson were naked. X.B. called the police. B.B. saw a searchlight and bit Johnson. B.B. was able to get up, run to a broken window, and screamed for help. Although it is unclear from the record what happened next, at some point B.B. was able to push Johnson out the kitchen door.

{¶13} B.B. went to see a doctor after the incident "for a checkup to make sure I was okay" because she had "scratches and bruises." B.B. testified that she was afraid

for her as well as her children's lives during the ordeal.

{¶14} Detective Michael Mathis ("Detective Mathis") of the Cleveland Heights Police Department arrived on scene while Johnson was banging on B.B.'s inner back door, asking to be let in so they could have sex. Johnson was naked. The detective detained him. Detectives Mathis and Earl Pierson interviewed Johnson. Johnson told the police he took an Uber to B.B.'s house to talk to her about their relationship. Johnson stated that he had called B.B., but she would not answer, so he got upset. He told police he went to B.B.'s place to have sex so he could then go to sleep. Johnson explained that he brought the exercise bar because B.B. had a gun and often had other men over at her house. Johnson admitted to breaking the side door window, to telling X.B. to leave, and that he was upset that B.B. did not take his phone calls. Johnson told the police that B.B. did allow him into her house, everything was fine between them, and he had broken out her window because he was upset. The police photographed the scene, including the broken doors and windows, the exercise bar, and pieces of B.B.'s synthetic hair.

{¶15} The jury convicted Johnson of all charges. The state filed a sentencing memorandum prior to sentencing. The trial court determined that the attempted rape did not merge with the burglary or the aggravated burglary but the aggravated burglary and the burglary merged. The state elected to proceed to sentencing on the aggravated burglary. The trial court sentenced Johnson to eight years for attempted rape, four years for aggravated burglary, twelve months for abduction, and 180 days for assault and

criminal damaging. The court ordered the sentences for attempted rape and aggravated burglary to run consecutive to each other and concurrent to all other counts, for a total sentence of 12 years in prison.

## Assignments of Error

{¶16} Johnson appealed and raises the following assignments of error for our review:

> I. The trial court erred in failing to merge appellant's convictions for attempted rape and aggravated burglary.

> II. The trial court erred in imposing the maximum sentence of eight years on Count 1, attempted rape, a felony of the second degree.

## Law and Analysis

{¶17} In the first assignment of error, Johnson contends that the trial court erred when it failed to merge his convictions for attempted rape and aggravated burglary. We review a trial court's ruling whether to merge convictions under the allied-offenses doctrine de novo. *State v. Corker*, 10th Dist. Franklin Nos. 13AP-264, 13AP-265, and 13AP-266, 2013-Ohio-5446, ¶ 28, citing *State v. Roush*, 10th Dist. Franklin No. 12AP-201, 2013-Ohio-3162, ¶ 67.

{¶18} R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his [or her] conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶19} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 ("*Ruff I*"), the Ohio Supreme Court explained that an allied offenses analysis is not limited to just a consideration of the defendant's conduct. The court held that while an allied offenses analysis begins with an examination of the defendant's conduct, courts must also consider whether (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶20} In this case, Johnson was convicted of attempted rape, in violation of R.C. 2907.02(A)(2) and 2923.02, which provides that Johnson "did attempt to engage in sexual conduct, to wit: vaginal intercourse, with Jane Doe by purposely compelling her to submit by force or threat of force." He was also convicted of aggravated burglary, in

violation of R.C. 2911.11(A)(1), which provides that Johnson:

> did by force, stealth, or deception, trespass, as defined in section 2911.21(A)(1) of the Revised Code, in an occupied structure or in separately secured or separately occupied portion of an occupied structure, when Jane Doe, person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure criminal offense, to wit: Attempted Rape and/or Assault, R.C. 2923.02/2907.02 and/or R.C. 2903.13, and the offender recklessly inflicted, or attempted or threatened to inflict physical harm on Jane Doe.

{¶21} The state claims that the offenses are not allied because Johnson broke into B.B.'s house to have consensual sex with B.B. and when she did not agree to have sex with him, he then formed the animus to attempt to rape her. Johnson contends that attempted rape and aggravated burglary offenses are allied when, as in this case, a defendant is convicted of both attempted rape and aggravated burglary and the attempted rape was the aggravating element that transformed the burglary into aggravated burglary.

{¶22} Both parties cite to cases to support their respective positions. The trial court ultimately agreed with the state and based its decision on *Ruff I*; *State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2015-Ohio-3367 ("*Ruff II*"); *State v. Greely*, 6th Dist. Lucas No. L-16-1161, 2017-Ohio-4469; and *State v. Wohl*, 12th Dist. Butler No. CA2016-11-218, 2017-Ohio-4367. As mentioned, the trial court determined that neither the burglary nor aggravated burglary convictions merged with the attempted rape and gave the state the election of which count (aggravated burglary or burglary) on which to proceed to sentencing. The state elected to proceed to sentencing on the aggravated burglary count.

{¶23} We now turn to a review of the cases on which the trial court relied, the cases cited to by the parties, and other relevant cases.

*Ruff I and II*

{¶24} In *Ruff I*, the Supreme Court of Ohio fashioned a new three-part test for determining whether convictions are subject to merger under R.C. 2941.25. The defendant had been convicted of three counts of aggravated burglary and three counts of rape based on three separate burglaries, and corresponding rapes, of three different victims. The *Ruff I* court remanded the case back to the First Appellate District to consider the import of the defendant's aggravated burglary and rape convictions — that is, whether the offenses resulted in "separate and identifiable" harm to each victim. On remand, the First District observed that the aggravated burglary offenses "involve[d] two distinct harms: the intrusion into the sanctity of the home and [sic] the subsequent physical harm (here, the rapes). One harm — the intrusion in the dwelling—is separate and identifiable * * *, but the other harm — the physical harm — is not separate and identifiable." *Ruff II* at ¶ 13. The court stated:

> If there only needed to be one harm that was separate and identifiable, then rape and aggravated burglary could never merge because aggravated burglary will always involve the "separate and identifiable" harm caused by the intrusion into the dwelling. The same would be true of assault or any other crime constituting the aggravating element of physical harm for aggravated burglary. Thus, implicit in its rejection of a categorical rule and remand to this court is the idea that the offenses are of similar import when the harm caused by one crime is the same harm that is the aggravating circumstance of another crime.

*Id.* at ¶ 16. Thus, the First District was of the view that whenever conduct that

constitutes one offense causes a harm that is not separate and identifiable from the harm caused by the aggravating element of another offense, then the offenses are of a similar import. *Id.* at ¶ 18.

**{¶25}** The dissent in *Ruff II*, would have found that the rape convictions did not merge with the aggravated burglaries based on the emotional trauma suffered by the victims:

> At the core of an aggravated-burglary offense is burglary. At the end of the day, this is an offense against the security of an occupied structure. That the harm caused by a burglary offense is different from an offense against a person is made evident by the fact that a person can be convicted of only one count of burglary regardless of the number of occupants at the time of the offense.
>
> * * *
>
> Rape, by contrast, is a personal crime. It involves physical and potentially long-lasting mental harm.

*Ruff II* at ¶ 29, 32 (Stautberg, J., dissenting); *see also* S*tate v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2013-Ohio-3234, ¶ 43 (Dinkelacker, J., dissenting) ("Perhaps the best illustration of the separation of these two offenses is the separate harms they caused the victims. The women in this case no longer feel safe in their homes, and have been physically violated in the most intimate, personal way possible. To characterize what occurred to them as merely the "physical harm" of an aggravated burglary is unthinkable.").

**{¶26}** The dissent in *Ruff II* considered that the evidence adduced at trial showed the long-term psychological impact the rapes had on the victims. While we do not doubt

that the victim in this case suffered emotional trauma, there was no evidence presented at trial in this case about the psychological impact the attempted rape had on B.B.

{¶27} In another case from the First District, *State v. Zeigler*, 2017-Ohio-7673, 97 N.E.3d 994 (1st Dist.), the defendant argued that the felonious assault and two rape offenses should merge with the aggravated burglary because the rapes provided the "physical harm" necessary for the aggravated burglary offense. The defendant argued that the state relied on the same physical harm either from the two counts of rape — the defendant's forceful and injurious vaginal and oral penetration of the victim at gunpoint — or, alternatively, from his conduct that constituted felonious assault — his forcing the victim to ingest various medications and other chemicals, which caused her serious injury — to elevate the burglary offense to aggravated burglary and, thus, the offenses were committed with the same conduct. *Id.* at ¶ 25.

{¶28} The First District, under a plain-error analysis, disagreed, finding that the defendant's actions in forcing the victim to ingest multiple chemical substances were "temporally distinct" and the defendant's conduct in forcing the victim to ingest Percocet and rubbing alcohol and the victim's vomiting blood in response to her ingestion of those substances was the physical harm that supported the physical-harm element of the felonious assault. Then the defendant's separate conduct in forcing the victim to take a drug to which she was allergic (Motrin) supported the physical-harm element necessary for the aggravated burglary conviction. Thus, the court concluded, the offenses were not allied because they were committed by separate conduct. *Id.* at ¶ 26.

*Greely* **and** *Wohl*

{¶29} In   *Greely*, 6th Dist. Lucas No. L-16-1161, 2017-Ohio-4469, the defendant trespassed into the victim's home and raped her orally, anally, and vaginally in her bed, and then raped the victim again in the shower as he attempted to remove his DNA from her anal and vaginal areas.   The defendant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1) and one count of rape in violation of R.C. 2907.02(A). On appeal, the Sixth Appellate District found that the aggravated burglary and rape offenses were not allied offenses of similar import because one rape supported the rape conviction, and the other rapes — although not charged as separate crimes — were the separate and identifiable harm that resulted from the aggravated burglary.   Thus, in *Greely*, the court found that there was separate and identifiable physical harm that supported the aggravating element of the burglary charge.

{¶30} In *Wohl*, 12th Dist. Butler No. CA2016-11-218, 2017-Ohio-4367, the defendant pleaded guilty to one count of burglary, three counts of rape, and one count of kidnapping.   The defendant trespassed into the victim's home and raped her digitally, vaginally, and anally, before trying to cover up his crime using bleach.   Under a plain-error analysis, the Twelfth Appellate District found that the burglary was already completed once the defendant forced his way into the victim's home and then the defendant committed three separate acts of rape, with an identifiable harm for each.   We note that, in *Wohl*, the court considered whether burglary and rape were allied offenses, not whether aggravated burglary and rape were allied; therefore, we do not find that *Wohl*

is illustrative for our purposes.

### State v. Bryant

**{¶31}** The state cites *State v. Bryant*, 10th Dist. Franklin No. 14AP-333, 2014-Ohio-5306, a pre-*Ruff I* case in which the defendant was convicted of rape and aggravated burglary. The defendant confronted the victim in the hallway of her apartment building with a knife or a box cutter in his hand and threatened to kill her if she did not perform fellatio on him. He then forced his way into the victim's apartment while threatening her life. Once inside the apartment, the defendant forced the victim to perform fellatio on him. Following the rape, the defendant trapped the victim inside her apartment while threatening to kill her to keep her from calling the police. The Tenth Appellate District found that the aggravated burglary and rape offenses were committed by separate acts and that the defendant exhibited a separate animus for the offenses:

> In this case, even if appellant's only animus was forced sexual conduct, he could have committed the sexual assault in the hallway outside the victim's apartment. Instead, he forced the victim inside her apartment. Further, after raping the victim, he did not immediately leave the apartment. Rather, he remained in the victim's apartment and continued to threaten to kill her while keeping her trapped inside. Thus, appellant's separate animus supported his separate convictions.

*Id.* at ¶ 33.

### State v. Roberson

**{¶32}** In *State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2018-Ohio-1955, the defendant had nonconsensual sex with the victim after she let him into her house. He then stole her television, computer, and game system. The defendant was convicted of

aggravated burglary and rape. On appeal, the defendant argued that his case was indistinguishable from *Ruff II* because the harm caused by his rape conviction was the same harm that was the aggravating circumstance of the aggravated burglary conviction and, therefore, the two offenses were of similar import and should have merged.

{¶33} The Sixth District Court of Appeals disagreed. The court, in disagreeing in part with *Ruff II*, stated:

We * * * disagree with *Ruff II*'s recognition of an "implicit" rule from the Supreme Court of Ohio that requires merger whenever one crime results in multiple "separate and identifiable" harms *but* one of those harms is the aggravating circumstance of the other crime. Indeed, this rule runs contrary to the Supreme Court of Ohio's explicit pronouncement that the defendant's conduct in each individual case should be the paramount consideration, and merger is *not* warranted if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Ruff* [*I*] at ¶ 26.

We do, however, recognize that under the Supreme Court of Ohio's decision in *Ruff* [*I*], the mere "intrusion into the sanctity of the home" that results from aggravated burglary is not a separate harm that is sufficient to support a finding of dissimilar import on its own — otherwise, aggravated burglary would always be a crime of dissimilar import to another offense, and the Supreme Court of Ohio rejected the notion of such a categorical rule. But here, there was an additional harm that resulted from the aggravated burglary — theft of C.G.'s TVs, computer, and game system — and this harm is separate and identifiable from the physical harm that resulted from the rape. Under *Ruff* [*I*], separate convictions are permissible if "the *harm* that results from each offense is separate and

identifiable." (Emphasis added.)   *Id.* at paragraph two of the syllabus.

*Roberson* at ¶ 26 – 27.

**{¶34}** Thus, the *Roberson* court determined that, pursuant to *Ruff I*, separate convictions are permissible if the harm that results from each offense is separate and identifiable, but rejected the rule that requires merger whenever one crime results in multiple separate and identifiable harms but one of those harms is the aggravating circumstance of the other crime.

**This case**

**{¶35}** In this case, B.B. testified about three separate times where Johnson either tried to break in or broke into her house.   The attempted rape occurred during the third incident.   If the aggravated burglary occurred during either of the first two break-ins, then it could be argued that the aggravated burglary was temporally distinct from the attempted rape and, therefore, the offenses would not merge.

**{¶36}** The indictment was dated "on or about February 24, 2017" and listed a single Jane Doe — multiple victims were not listed in the indictment; therefore, the court could not consider that the offenses were not allied based on separate victims.  *See Roberson* at ¶ 20 (finding that the aggravated burglary and rape did not involve separate victims when the indictment does not identify the victims of the aggravated burglary and the police report identifies only one victim of both the aggravated burglary and the rape).

**{¶37}** B.B. testified that on February 22, 2017, Johnson came to her house and attempted to gain access to her house by breaking in the outer front door and a window

after arguing with her about the "baby situation." B.B. testified that Johnson broke into the outer front door with his body weight: "He was pushing, you know, trying to open the door, ramming with his like shoulder and body weight, and he physically got in one of the doors and was trying the second one." Thus, while there may have been sufficient evidence of burglary (Johnson was convicted of burglary pursuant to R.C. 2911.12(A)(1)), there was no evidence that Johnson trespassed at that time to commit attempted rape and/or assault; therefore, we find that an aggravated burglary did not occur at that time.

{¶38} The second instance occurred on February 24, 2017, when Johnson came to the house around 3:30 or 4:00 a.m. According to B.B.'s testimony, Johnson told her he was mad that B.B. was ignoring him, that if she did not let him in he would break the windows, and that if he could not come in then she could not live there. At this point, Johnson began breaking windows around the house with his pull-up bar and pushed out the plexiglass window of the outer back door. He left via Uber after B.B.'s kids woke up and started screaming. After a thorough review of the record, we conclude that it is unknown at this point why Johnson wanted to gain access to B.B.'s home — he had not yet stated he wanted to have sex with her or threatened to harm her. Therefore, we must conclude that the aggravated burglary had not yet occurred.

{¶39} The third instance occurred when Johnson returned while B.B. was consoling her children in the kitchen. According to B.B., Johnson told her he went to the store, and "he had thought about it, I needed to give him some [sex] so he could go to

work, and he would leave me alone." Thus, it was at this point, during Johnson's trip to the store, that he created the animus to have sex with B.B.

{¶40} We disagree with the state's contention that Johnson was seeking to have consensual sex with B.B. There is no evidence in the record that he sought consensual sex. To the contrary, at the time of the attack, B.B. and Johnson were no longer dating, he had twice tried to break into her house, and the two had been arguing. Moreover, B.B. had told police after the first attempted break-in that she was interested in pursuing charges against Johnson.

{¶41} Johnson returned to B.B.'s house from the store, and she saw the exercise bar come through her kitchen door, followed by Johnson. Johnson told her all she had to do was have sex with him and he would leave. B.B. ran to push him out of the house, and a struggle ensued in the landing of the kitchen stairway. Johnson ripped B.B.'s dress off and threw it outside. Johnson pinned B.B. against the wall and removed his own clothes. The struggle moved from the outer area of the house inside the house through the kitchen, dining room, and into the living room. At one point, Johnson had his hands around B.B.'s neck. During the assault, Johnson pulled out all of B.B.'s hair extensions, and B.B. testified that it hurt. The police photographed the scene, including the broken doors and windows, the exercise bar, and pieces of B.B.'s synthetic hair in the living room and dining room.

{¶42} Based on this record, we find that the harm caused by the attempted rape was the aggravating circumstances of the aggravated burglary and that harm was not

separate and identifiable. However, our analysis does not end here. As mentioned, the aggravating circumstance of the aggravated burglary as charged in the indictment was "Attempted Rape and/or Assault, R.C. 2923.02/2907.02 and/or R.C. 2903.13." Although Johnson's attempted rape of B.B. may not have had a separate and identifiable harm, we find that Johnson's assault of B.B. was a separate and identifiable harm.

{¶43} There was no evidence in the record that Johnson developed the animus to assault B.B. prior to or concurrent with breaking into her house – as both parties agree, Johnson's sole intent was to have sex with B.B. B.B. testified that a struggle ensued as soon as Johnson came through the door. Johnson ripped off B.B.'s nightgown, pinned her up against a wall, and took off his clothes. He then took her through the kitchen, dining room, and living room where he got her on the couch and choked her with his hands around her neck. At one point he also had her on the living room floor; X.B. testified he saw Johnson on top of his mother with his mother trying to push Johnson off, and they were both naked.

{¶44} During the encounter, Johnson also ripped out all of B.B.'s hair extensions, which she testified "hurt." X.B. testified he heard his mother screaming in pain and yelling at Johnson to "stop pulling my hair." The police photographed B.B.'s hair on the floor of the living room and dining room. B.B. also sought medical attention for "scratches and bruises."

{¶45} In light of the above, we find that the harm caused by Johnson's assault of B.B. is separate and identifiable from the harm caused by the aggravated burglary

offense. Once Johnson was found to be trespassing in B.B.'s house, his purpose was to have sex with her and he ripped off her nightgown, threw it outside, pinned her to the wall, and took off his own clothes in an attempt to rape her. Essentially, the aggravated burglary was completed by an attempt to forcibly have sexual intercourse with B.B. before Johnson committed the additional assault on B.B. by pulling out her hair extensions and choking her.

**{¶46}** We conclude, albeit for different reasons than the trial court did, that the offenses of attempted rape and aggravated burglary are not allied offenses of similar import.[1]

**{¶47}** The first assignment of error is overruled.

**Maximum Sentences**

**{¶48}** In the second assignment of error, Johnson claims that the trial court erred in imposing the maximum sentence for attempted rape.

**{¶49}** In reviewing felony sentences, we do not review the sentence for an abuse of discretion; rather, we apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Wright*, 8th Dist. Cuyahoga No. 106175, 2018-Ohio-965, ¶ 9; *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify a sentence, or vacate and remand for

---

[1] What may be gleaned from this decision is that an allied-offenses analysis under *Ruff I* is extremely case specific; we cannot overemphasize the importance of creating a thorough record for review.

resentencing if we clearly and convincingly find that the record does not support the sentencing court's statutory findings under R.C. 2929.14(C)(4) or the sentence is contrary to law. *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 9.

**{¶50}** A sentence is contrary to law if it falls outside the statutory range for the particular degree of offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58. A trial court's imposition of a maximum term of imprisonment for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense and the court considers the purposes and principles of felony sentencing outlined in R.C. 2929.11 and the seriousness and recidivism factors outlined in R.C. 2929.12. *Wright* at ¶ 16; *State v. West*, 8th Dist. Cuyahoga No. 105568, 2018-Ohio-956, ¶ 9, 10 (stressing a trial court's "full discretion" to impose the maximum sentence as long as the sentence is within the statutory range and the court considered the relevant statutory purposes and guidelines).

**{¶51}** R.C. 2929.11(A) provides that the overriding purposes of felony sentencing are (1) to protect the public from future crime by the offender and others; and (2) to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent

with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶52} The court that imposes a felony sentence has the discretion to determine the most effective way to comply with the purposes and principles of sentencing as outlined above. R.C. 2929.12(A); *State v. Switzer*, 8th Dist. Cuyahoga No. 102175, 2015-Ohio-2954, ¶ 10. In exercising this discretion, however, the sentencing court must consider a statutory list of factors regarding the seriousness of the offender's conduct and the likelihood of recidivism, as well as any other factors relevant to achieving these purposes and principles of sentencing. *See* R.C. 2929.12; *Switzer*. These factors include the physical or mental injury suffered by the victim due to the age of the victim; the physical, psychological, or economic harm suffered by the victim; whether the offender's relationship with the victim facilitated the offense; the defendant's prior criminal record; whether the defendant was under a court sanction at the time of the offense; whether the defendant shows any remorse; and any other relevant factors. R.C. 2929.12(B) and (D). The court must also consider any factors indicating the offender's conduct is less serious than conduct normally constituting the offense, including any mitigating factors. R.C. 2929.12( C).

{¶53} Although the trial court has a mandatory duty to "consider" the statutory factors under R.C. 2929.11 and 2929.12, the court is not required to engage in any factual findings under R.C. 2929.11 or 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 11. Indeed, consideration of the statutory factors is presumed unless the defendant affirmatively demonstrates otherwise. *Id.*

Moreover, a trial court's statement in its sentencing journal entry that it considered the required statutory factors sufficiently fulfills its obligations under R.C. 2929.11 and 2929.12. *Wright*, 8th Dist. Cuyahoga No. 106175, 2018-Ohio-965, at ¶ 16; *West*, 8th Dist. Cuyahoga No. 105568, 2018-Ohio-956, at ¶ 11.

{¶54} Here, there is no dispute that Johnson's eight-year sentence is within the statutory range for the second degree attempted rape offense. And in reviewing the record, we find the court considered the principles and purposes of felony sentencing outlined in R.C. 2929.11 and the sentencing factors outlined in R.C. 2929.12 prior to sentencing.

{¶55} Before imposing sentence, the court heard from the prosecutor, who provided the factual background of the case in the sentencing memorandum and in court. The court heard from the victim through a victim impact statement, from the defendant, and from the defendant's mother. The court noted the impact that the crime had on the victim's children and the trauma it caused them. The court further noted the injuries Johnson caused to B.B. and that Johnson did not accept responsibility for his actions.

{¶56} The court stated that it had considered the presentence investigation report and found that consecutive sentences were warranted. The court noted that Johnson had a lengthy criminal record and history of violating protection orders, that this form of the attempted rape offense was the most serious form of the offense, and that there were no mitigating factors.

{¶57} In light of the foregoing, we cannot say the trial court's imposition of a

maximum sentence for attempted rape is unsupported by the record or is contrary to law.

{¶58} The second assignment of error is overruled.

{¶59} The trial court did not err when it determined that aggravated burglary and attempted rape were not allied offenses of similar import based on the facts of this case. The trial court also did not err in imposing the maximum sentence for attempted rape.

{¶60} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

EILEEN A. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR