[Cite as *State v. Jackson*, 2019-Ohio-577.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-17-1228

    Appellee                                    Trial Court No. CR0201502418

v.

Clifton Jackson                               **DECISION AND JUDGMENT**

    Appellant                                    Decided:  February 15, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Edward J. Stechschulte, for appellant.

* * * * *

**MAYLE, P.J.**

**{¶ 1}** Appellant, Clifton Jackson, appeals the August 22, 2017 judgment of the

Lucas County Court of Common Pleas sentencing him to 43 years in prison for

convictions of rape, kidnapping, and aggravated burglary.  For the following reasons, we

affirm.

2.

## I. Background and Facts

{¶ 2} In 2015, Jackson was indicted on nine first-degree felonies relating to an incident that occurred in 1998. Specifically, he was charged with two counts of rape in violation of R.C. 2907.02(A)(2); one count of kidnapping in violation of R.C. 2905.01(A)(4); four counts of kidnapping in violation of R.C. 2905.01(A)(2); one count of aggravated burglary in violation of R.C. 2911.11(A)(2); and one count of aggravated robbery in violation of R.C. 2911.01(A)(1). Each count included a repeat-violent-offender specification under R.C. 2941.149 and a firearm specification under R.C. 2941.145.

{¶ 3} Jackson agreed to plead guilty to five charges pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970): both rape counts, one of which included a repeat-violent-offender specification; the count of kidnapping charged under R.C. 2905.01(A)(4); one count of kidnapping charged under R.C. 2905.01(A)(2); and the aggravated burglary count, which included a firearm specification.

{¶ 4} At the plea hearing, the state explained the circumstances of the January 16, 1998 crimes. According to the state, Jackson and an accomplice burglarized a home in Lucas County where C.O., her fiancé, and her three children lived. At the time, the oldest child, A.O., was nine years old and the two younger children were both toddlers. That night, Jackson and the accomplice held C.O., the children, and R.G. (a relative of C.O.'s fiancé who happened to visit the home while Jackson and the accomplice were there) at gunpoint, ransacked the home, and stole jewelry and a shotgun. Jackson also raped C.O.

3.

{¶ 5} Although police could not initially identify either perpetrator, in 2015 the Ohio Bureau of Criminal Investigation ("BCI") reported to the Toledo Police Department ("TPD") that an inmate in Illinois was a preliminary match for the DNA obtained from C.O.'s rape kit.[1] A TPD detective interviewed Jackson and obtained a DNA sample from him pursuant to a warrant. During the interview, Jackson denied having sexual relations with C.O., being in C.O.'s house, knowing the victims, or ever being in Toledo. BCI tested Jackson's DNA sample against the DNA from the rape kit and found that "the frequency in which the same profile would be found was 1 in 6 quintillion 184 quadrillion. That is the number 6,184 followed by 15 zeros."

{¶ 6} On the night of the crimes, the state said, Jackson and the accomplice knocked on the door of the home around 6:45 p.m. A.O., who was in the front room playing with the two younger children, answered the door, and Jackson asked for C.O.'s fiancé. When A.O. saw that Jackson was holding a gun, she attempted to shut the door, but Jackson and the accomplice forced their way into the home, knocking A.O. down in the process. Once inside the house, Jackson grabbed A.O., put his gun to her head, told her to call for her mother, and moved her further into the house. When C.O. came into the living room, Jackson held her and the children at gunpoint while the accomplice

---

[1] At the plea hearing, the state indicated that BCI reported the preliminary DNA match to TPD in "June of 2016." Jackson was indicted—based on the DNA match—in August 2015, however, so we presume that BCI reported the preliminary match in 2015.

4.

ransacked the house and searched the back yard. The accomplice eventually returned to the living room with a shotgun that belonged to C.O.'s fiancé.

{¶ 7} When the accomplice finished his search, Jackson told him to take the children into a bedroom while Jackson forced C.O.—at gunpoint—into another bedroom. In the bedroom, Jackson patted down C.O., stole the rings she was wearing, demanded more jewelry, and took a box of jewelry that C.O. offered in response. He then fondled C.O.'s breasts and digitally penetrated her vagina. When C.O. asked him to stop, he ordered her to take off her clothes. After C.O. removed her clothes, Jackson forced her to fellate him. He then bent C.O. over a dresser and penetrated her vagina with his penis. The vaginal rape lasted for "a few minutes," during which the accomplice knocked on the bedroom door. Jackson told him to wait. When Jackson finished, he forced C.O. back into the living room, where the accomplice was holding the children.

{¶ 8} Shortly after, R.G. knocked on the front door. Jackson ordered C.O. to open the door, and when she did, he pulled R.G. into the house, forced him to the floor at gunpoint, and hogtied him with an electrical cord. A second man later knocked on the door. Jackson attempted to pull him inside, but the man slipped out of his jacket and ran away. After the second man escaped, Jackson and his accomplice fled the house through the back door. C.O., the children, and R.G. (who was still bound by the electrical cord) ran to a nearby relative's home to call the police. C.O. was later taken to the hospital for a rape kit examination.

5.

{¶ 9} The state specified that it was relying on Jackson digitally penetrating C.O.'s vagina and forcing C.O. to fellate him to support the rape count with the repeat-violent-offender specification; Jackson penetrating C.O.'s vagina with his penis to support the second rape count; Jackson forcing C.O. at gunpoint into the bedroom for the purpose of engaging in sexual activity to support the kidnapping count under R.C. 2905.01(A)(4); Jackson forcing A.O. from the entry of the home to the living room at gunpoint and pulling R.G. into the home and hogtieing him to support the kidnapping count under R.C. 2905.01(A)(2); and Jackson's forcible entry into the home "to commit multiple felonies, including rape, kidnapping, theft of property, and robbery * * *" to support the aggravated burglary charge.

{¶ 10} The trial court accepted Jackson's *Alford* pleas and found him guilty of all charges.

{¶ 11} At the sentencing hearing, the court ordered Jackson to serve 9 years in prison for each rape count, 5 years for each kidnapping count, 7 years for the aggravated burglary count, 5 years for the repeat violent offender specification, and 3 years for the firearm specification.  The court ordered Jackson to serve his sentences consecutively, for an aggregate prison term of 43 years.

{¶ 12} Following the trial court's imposition of sentence, Jackson raised the issue of merger.  He argued that the aggravated burglary charge "certainly" merged with the rape charges and "probably" merged with the kidnapping charges because Jackson could not have accomplished either the rapes or the kidnappings without first entering the

6.

home. In other words, the convictions merged because Jackson committed all of the crimes with the same conduct and animus. The state countered that the aggravated burglary was complete when Jackson forced his way into the house with a gun and Jackson did not take C.O.'s property until after he had completed the burglary. So the state claimed that the charges did not merge "due to the elements that are included in aggravated burglary"—essentially that merger was inapplicable because Jackson committed a theft offense in addition to the rapes and kidnappings.

{¶ 13} The trial court denied Jackson's request to merge the aggravated burglary conviction with the rape and kidnapping convictions. The court determined, based on the facts of the case, that "merger is not applicable because the actions of this individual and removing items which would have been a different felony offense than for which the two rapes, the two kidnappings for which he has now plead and sentenced * * *."

{¶ 14} Jackson now appeals, raising one assignment of error:

APPELLANT'S CONVICTIONS WERE ALLIED OFFENSES OF SIMILAR IMPORT AND SUBJECT TO MERGER.

## II. Law and Analysis

{¶ 15} Jackson argues that his aggravated burglary conviction should have merged with the remaining four convictions because the harms from the rapes and the aggravated burglary were not separate and identifiable, while the kidnappings and the aggravated burglary involved a single course of conduct and the same animus. Alternatively, he contends that the kidnapping count charged under R.C. 2905.01(A)(4) should have

merged with the two rape counts because the kidnapping was incidental to the rapes, so no separate animus existed.

{¶ 16} The state counters that the aggravated burglary should not merge into any of the remaining crimes because the harm caused by the rapes was separate and identifiable from the harm caused by the aggravated burglary, the aggravated burglary involved victims separate from the rape and kidnapping victims, Jackson intended to commit multiple crimes (beyond the rapes) when he entered the home, and the kidnappings were committed separately from the aggravated burglary. The state also contends that the rape and R.C. 2905.01(A)(4) kidnapping convictions do not merge because the kidnapping was not incidental to the rapes.

{¶ 17} We find that none of Jackson's convictions merge for sentencing because the burglary, rapes, and kidnappings each resulted in separate and identifiable harm.

{¶ 18} Generally, we review de novo a trial court's ruling as to whether convictions merge under the allied-offenses doctrine. *State v. Roberson*, 2018-Ohio-1955, 113 N.E.3d 204, ¶ 12 (6th Dist.). When the appellant does not raise the issue of allied offenses of similar import in the trial court, however, our review of this issue on appeal is limited to plain error. *Id.* To show plain error, the appellant "must 'demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus,' and 'absent that showing, the accused cannot demonstrate that the trial court's failure to

8.

inquire whether the convictions merge for purposes of sentencing was plain error.'" *Id.*, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

{¶ 19} Jackson sought merger of the aggravated burglary conviction with the rape and kidnapping convictions in the trial court, so we will review the trial court's decisions on those convictions de novo. Jackson did not ask the trial court to merge his rape convictions and his kidnapping conviction under R.C. 2905.01(A)(4), however, so we will review those convictions only for plain error.

{¶ 20} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The right against double jeopardy is also guaranteed by the Ohio Constitution, Article I, Section 10 ("No person shall be twice put in jeopardy for the same offense."). "The protection provided by the Ohio Constitution's Double Jeopardy Clause is coextensive with that provided by the Double Jeopardy Clause of the United States Constitution." *Clark v. Adult Parole Auth.*, 151 Ohio St.3d 522, 2017-Ohio-8391, 90 N.E.3d 909, ¶ 13.

{¶ 21} The Double Jeopardy Clause "protects against three abuses:  (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, quoting *North Carolina*

9.

*v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

{¶ 22} The Double Jeopardy Clause's third protection is codified in R.C. 2941.25, which prohibits multiple punishments for the same offense by prohibiting multiple convictions for "allied offenses of similar import" arising out of the same conduct. The statute states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 23} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff* at ¶ 26. This means that the "'analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an

inherently subjective determination.'" *Id.* at ¶ 32, quoting *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 52.

{¶ 24} In *Ruff,* the Supreme Court of Ohio announced that whenever a court considers whether there are allied offenses that merge into a single conviction, the court "must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Id.* at ¶ 25. When considering this overarching question, the court must address three sub-questions: (1) Were the offenses "dissimilar in import," meaning did the offenses involve either separate victims or "separate and identifiable" harm? (2) Were the offenses committed separately? and (3) Were the offenses committed with separate animus? *Id.* at ¶ 23-25. "'An affirmative answer to *any* of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.'" (Emphasis added.) *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *Ruff* at ¶ 31. The defendant bears the burden of establishing that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

{¶ 25} Under the *Ruff* test, we first address whether the offenses were "dissimilar in import"—i.e., whether the offenses involved separate victims or "separate and identifiable" harms. In this case, we find that Jackson's crimes are dissimilar in import because each offense caused separate and identifiable harm.

11.

{¶ 26} First, we find "as a matter of law and common sense" that each of the rapes Jackson perpetrated against C.O. caused her separate and identifiable harm in the form of physical and mental trauma. *State v. Dean*, 2018-Ohio-1740, 112 N.E.3d 32, ¶ 56 (6th Dist.).

{¶ 27} Next, we find that C.O., A.O., and R.G. each suffered personal harms as a result of the kidnappings. In addition to the harms that she suffered because of the rapes, C.O. was held at gunpoint in the living room. A.O. was knocked down, had a gun held to her head, and was held at gunpoint in the living room. And R.G. was physically pulled into C.O.'s home, forced to the floor at gunpoint, and tied up. Each of the indignities that C.O., A.O., and R.G. suffered constituted a separate harm and each harm was distinct from the harms caused by the rapes and the aggravated burglary. *See State v. Williams*, 2015-Ohio-4100, 43 N.E.3d 797, ¶ 24 (7th Dist.) (the victim suffered multiple separate and identifiable harms from the defendant forcing her to the floor at gunpoint, pulling her hair, moving her at gunpoint, threatening to shoot her if she did not stay quiet, and using her fear for her child to restrain her because none of the harms overlapped with the harms caused by the defendant's other offenses against the victim).

{¶ 28} Finally, we find that the aggravated burglary caused the separate and identifiable harm of theft of C.O.'s jewelry and her fiancé's shotgun. Jackson implies that C.O. and her fiancé's loss of property could not be a separate harm because he was not convicted of a theft offense. But having property stolen can be a harm that results from aggravated burglary, whether or not the defendant is ultimately charged with or

12.

convicted of stealing the property. *See Roberson*, 2018-Ohio-1955, 113 N.E.3d 204, at ¶ 27 (aggravated burglary resulted in harm separate from the underlying rape because the victim's property was stolen, even though the defendant was not charged with or convicted of a theft offense).

{¶ 29} Because the harms that resulted from the rapes (i.e., the physical and mental trauma to C.O.), the kidnappings (i.e., the personal harms to C.O., A.O., and R.G.), and the aggravated burglary (i.e., the theft) were all "separate and identifiable," we find that Jackson's convictions were offenses of dissimilar import.

{¶ 30} Given that we have answered the first prong of the *Ruff* test in the affirmative and determined that Jackson's convictions were dissimilar in import, we need not address the remaining two elements of *Ruff*. *Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, at ¶ 12 ("'An affirmative answer to *any* of the [required questions under *Ruff*] will permit separate convictions.'" (Emphasis added.)). Therefore, we find that the trial court correctly declined to merge Jackson's aggravated burglary conviction with his rape or kidnapping convictions and did not commit plain error by failing to merge Jackson's rape convictions with his kidnapping conviction under R.C. 2905.01(A)(4). Accordingly, we find that Jackson's assignment of error is not well-taken.

13.

### III. Conclusion

**{¶ 31}** For the foregoing reasons, the August 22, 2017 judgment of the Lucas County Court of Common Pleas is affirmed. Jackson is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

14.